[Cite as *Bates v. Rose*, 2017-Ohio-7977.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Chris Bates

    Appellant

v.

Richard Rose

    Appellee

Court of Appeals No.  WD-16-068

Trial Court No. 15-CVF-00912

**DECISION AND JUDGMENT**

Decided:  September 29, 2017

* * * * *

John C. Filkins, for appellant.

* * * * *

**JENSEN, P.J.**

## I.  Introduction

{¶ 1}  Appellant, Chris Bates, appeals the judgment of the Bowling Green Municipal Court, which found in his favor on his claim for damages in the amount of $8,000 pursuant to a promissory note, and found in favor of appellee, Richard Rose, on appellee's counterclaim for unpaid wages in the amount of $10,175, yielding a judgment

in appellee's favor for the difference of $2,175.  For the following reasons, we affirm, in part, and reverse, in part.

## A.  Facts and Procedural Background

{¶ 2}  On September 1, 2015, appellant filed a five-count complaint with the Bowling Green Municipal Court.   In count one of the complaint, appellant alleged that the parties entered into a promissory note on October 17, 2014 for the principal sum of $8,000.00.  Appellant alleged that appellee had failed to make any payments on the $8,000 loan.  Appellant attached a copy of the promissory note to the complaint.  The promissory note, which was signed by both parties, required repayment in the form of six monthly installments beginning on November 20, 2014.  In the event of default, the promissory note included a provision requiring appellee to pay "'reasonable attorneys' fees not exceeding a sum equal to 15% of the then outstanding balance owing on the Note, plus all other reasonable expenses incurred by [appellant] in exercising any of [his] rights and remedies upon default."  Moreover, the note provided for interest to accrue at the rate of 7.5 percent annually.

{¶ 3}  In count two of appellant's complaint, appellant alleged that appellee failed to reimburse him after he purchased 40 appliances from the Habitat for Humanity Restore for $3,744.57 on August 12, 2014, at appellee's request.  A copy of the receipt for the purchase of the appliances was attached to the complaint.

{¶ 4}  In counts three and four of appellant's complaint, appellant alleged that he lent appellee the use of an aluminum brake (a piece of equipment used to bend metal)

2.

with a fair market value of $500 and two Stihl yard trimmers with a value of $249 each. According to the complaint, appellee failed to return the aluminum brake and the yard trimmers.

{¶ 5} In count five of the appellant's complaint, appellant alleged that appellee was unjustly enriched in the amount of $14,542.57, which included the amount appellee owed under the promissory note, with interest, as well as the amount appellee allegedly owed for the appliances, aluminum brake, and yard trimmers. Appellant also requested "reasonably attorney's fees of $1,200" pursuant to the terms of the promissory note.

{¶ 6} In responding to appellant's complaint, appellee filed his answer and counterclaim on November 16, 2015. In his answer, appellee indicated that his obligations to make payments under the promissory note were excused pursuant to an agreement between the parties that required appellee to perform labor for appellant at a worksite known as Johnson Rubber at a rate of $25 per hour in exchange for appellant forgiving installments on the note. Appellee alleged that he worked a total of 407 hours (for a value of $10,175). Because he had not been paid for his labor, appellee asserted a counterclaim against appellant for the sum of $2,175, representing the difference between the amount he earned working 407 hours for appellant and the $8,000 he borrowed from appellant.

{¶ 7} Following discovery, this matter proceeded to a trial before the bench on October 6, 2016. Several witnesses, including appellant and appellee, testified at trial. During appellee's testimony, he acknowledged that his signature appeared on the promissory note and further admitted that he had made no payments on the $8,000 loan

3.

he received from appellant. Appellee testified that the reason he did not make any payments on the promissory note was that he was not paid for work that he performed at Johnson Rubber for a corporation known as Bates Recycling, Inc. Appellant is the sole shareholder of Bates Recycling, Inc. Notably, appellee's counterclaim was not asserted against Bates Recycling, Inc., and the corporation was not named as a party in these proceedings. Rather, the counterclaim was brought against appellant in his individual capacity.

{¶ 8} During appellant's testimony, he acknowledged that appellee performed work for Bates Recycling, Inc. at Johnson Rubber. However, appellant indicated that Bates Recycling, Inc. paid appellee for the hours that he worked. Further, appellant insisted that there was no agreement for Bates Recycling, Inc. to pay appellee $25 per hour. Appellant testified that Bates Recycling, Inc. only pays between $15 and $17 per hour to its most experienced heavy equipment operators.

{¶ 9} Appellant went on to testify regarding the agreement he allegedly reached with appellee to finance the purchase of the appliances from Habitat for Humanity Restore. On that issue, appellant stated that appellee asked him to purchase 40 appliances from the Habitat for Humanity Restore so that appellee could restore the appliances and resell them, presumably at a profit. Pursuant to this agreement, appellant purchased 30 appliances for $99.99 apiece and purchased the remaining 10 appliances for $49.99 apiece, for a total expense, including sales tax, of $3,744.57. According to appellant, appellee did not reimburse him for the cost of the appliances.

4.

{¶ 10} Appellee did not dispute that he had not repaid appellant for the cost of the appliances. However, appellee testified that he was not required to reimburse appellant the sum of $3,744.57 until he sold the appliances, and that the parties would then divide the profits evenly. According to appellee, he sold six of the appliances as of the date of trial. Appellee disbursed the proceeds from the sale of those appliances to appellant, but appellant returned the money to appellee.

{¶ 11} Concerning appellant's claims relating to the aluminum brake and the yard trimmers, appellant testified that he and appellee were together at a sale when appellant purchased these items. Thereafter, appellee took possession of the items and agreed to sell them and reimburse appellant for the purchase price. Appellee has not paid appellant for these items. However, appellee testified that he was not in possession of the aluminum brake. Further, appellee stated that he took the yard trimmers from appellant, paid for them to be repaired at his own expense, and then returned the yard trimmers to appellant.

{¶ 12} Following the presentation of the evidence at trial, the trial court found in favor of appellant on his claim for damages under the promissory note in the amount of $8,000. Notably, the trial court did not award appellant anything in the way of interest or attorney's fees as provided under the note. The court found no merit to appellant's claims concerning the appliances, the aluminum brake, or the Stihl yard trimmers. Further, the trial court found in appellee's favor on his counterclaim in the amount of $10,175. The court offset appellant's claim under the promissory note by the $10,175 it

5.

awarded appellee, leaving a judgment in appellee's favor in the amount of $2,175. It is from this judgment that appellant timely filed his notice of appeal.

## B. Assignments of Error

{¶ 13} On appeal, appellant assigns the following errors for our review:

ASSIGNMENT OF ERROR I: Whether the Trial Court, when granting judgment in favor of the Appellant, erred as a result of its failure to include in Appellant's judgment annual interest at the rate of 7.5% as well as attorney's fees of $1,200.00 as called for within the promissory note marked as Exhibit A.

ASSIGNMENT OF ERROR II: Whether the Trial Court erred in its conclusion that the Appellee was owed any compensation by a corporation identified as Bates Recycling, Inc. for three reasons: First, Bates Recycling, Inc. is not a party to these proceedings; second, there was insufficient evidence presented to allow the trial court to pierce the corporate veil; and third, the evidence established at trial that the Appellee was paid for all services rendered while working for Bates Recycling, Inc.

ASSIGNMENT OF ERROR III: Whether the Trial Court erred when it failed to render judgment in favor of Appellant and against Appellee as the result of Appellee's failure to reimburse the Appellant for a loan in the amount of $3,744.57 used to purchase appliances from Habitat for Humanity.

6.

ASSIGNMENT OF ERROR IV: Whether the Trial Court erred when it failed to render judgment in favor of Appellant and against Appellee as the result of Appellee's conversion of assets of Appellant for which he has failed to compensate Appellant.

## II. Analysis

### A. Interest and Attorney Fees

{¶ 14} In his first assignment of error, appellant argues that the trial court, upon its conclusion that appellee defaulted on the terms of the promissory note, erred in failing to award him interest and attorney's fees pursuant to the express terms of the note. We will address these two items separately.

{¶ 15} An award of prejudgment interest as to claims arising out of a breach of contract is governed by R.C. 1343.03(A). *Galmish v. Cicchini*, 90 Ohio St.3d 22, 33, 734 N.E.2d 782 (2000). That statute reads in relevant part:

> * * * when money becomes due and payable upon any * * * note, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in the contract.

7.

{¶ 16} Here, it is clear from the express terms of the promissory note attached to the complaint and entered into evidence at trial that appellant was entitled to interest at the rate of 7.5 percent. Therefore, the trial court should have awarded interest to appellant at that rate from the date the note became due and payable, and erred in failing to do so. *See CitiFinancial, Inc. v. Barrett*, 6th Dist. Lucas No. L-07-1058, 2008-Ohio-1558 (trial court erred in failing to award lender interest at the rate provided in the promissory note upon its determination that the borrower defaulted on the note).

{¶ 17} Next, appellant argues that the trial court erred in failing to award him attorney fees on his claim under the promissory note.

{¶ 18} We review a trial court's decision on a request for attorneys' fees under an abuse of discretion standard. *Yarber v. Cooper*, 61 Ohio App.3d 609, 612, 573 N.E.2d 713 (6th Dist.1988). The term "abuse of discretion" implies that the court's decision was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} Reasonableness is the chief inquiry governing a trial court's decision whether to award attorney's fees to a party. Therefore, the court must have evidence regarding the reasonableness of claimed attorney fees before it can award such fees to the claimant. *Yarber* at 614; *see also Baker-Chaney v. Chaney*, 5th Dist. Holmes No. 16CA005, 2017-Ohio-5548, ¶ 46 ("While the trial court has discretion in determining the amount of attorney fees, the court must base its decision on evidence showing the reasonableness of the time spent on the matter and the hourly rate.").

8.

{¶ 20} As noted above, the promissory note included a provision requiring appellee to pay "'reasonable attorneys' fees not exceeding a sum equal to 15% of the then outstanding balance owing on the Note, plus all other reasonable expenses incurred by [appellant] in exercising any of [his] rights and remedies upon default." Notably, the record contains no substantive evidence as to the reasonableness of appellant's attorney fees. Indeed, appellant's claim for $1,200 in fees is based on the maximum allowable under the terms of the note, and is not tied to the actual expenditure of time or effort on the part of his attorney.

{¶ 21} We have previously held that we will presume the regularity of the proceedings below where the record contains no evidence regarding the reasonableness of attorney fees. *Albreqt v. Chen*, 17 Ohio App.3d 79, 83, 477 N.E.2d 1150 (6th Dist.1983). Given the fact that appellant failed to produce record evidence of the reasonableness of his attorney's fees, we reject his argument that the trial court abused its discretion in failing to award him such fees.

{¶ 22} Accordingly, appellant's first assignment of error is well-taken, in part.

### B. Judgment on Appellee's Counterclaim

{¶ 23} In his second assignment of error, appellant asserts that the trial court erroneously entered judgment in favor of appellee on his counterclaim for unpaid wages earned while working at Bates Recycling, Inc. In support of his assignment of error, appellant notes that Bates Recycling, Inc. is not a party to these proceedings and argues that there was insufficient evidence presented to allow the trial court to pierce the corporate veil and hold him personally liable. Moreover, appellant contends that the

9.

evidence he presented at trial establishes that appellee was paid for the services he rendered while employed with Bates Recycling, Inc.

{¶ 24} "A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 287, 617 N.E.2d 1075 (1993). This general rule may be set aside, and the corporate veil pierced, where the following three elements are established by the party asserting personal liability: (1) the parent's control over the subsidiary was so complete that the corporation has no separate mind, will, or existence of its own; (2) the parent exercised control over the subsidiary in such a manner as to commit fraud, an illegal act, or a similarly unlawful act; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 18, 29.

{¶ 25} In *Dombroski*, the Supreme Court of Ohio emphasized that "limited shareholder liability is the rule * * * and piercing the corporate veil is the 'rare exception' that should only be 'applied in the case of fraud or certain other exceptional circumstances.'" *Id.* at ¶ 26, quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). Accordingly, piercing the corporate veil should be limited to cases in which "shareholders used their complete control over the corporate form to commit specific egregious acts." *Id.* at ¶ 27. Additionally, we note that appellee

10.

bears the burden of proof in this case as he is the party seeking to have the corporate form disregarded. *Starner v. Guardian Industries*, 143 Ohio App.3d 461, 469, 758 N.E.2d 270 (10th Dist.2001).

{¶ 26} Our review of the trial court's decision to pierce the corporate veil is limited to finding whether competent, credible evidence supports the trial court's decision. *State ex rel. DeWine v. S&R Recycling, Inc.*, 195 Ohio App.3d 744, 2011-Ohio-3371, 961 N.E.2d 1153, ¶ 29 (7th Dist.).

{¶ 27} In its judgment entry, the trial court stated the following, in relevant part:

> Plaintiff operates many interconnecting businesses. The common thread for all of the businesses is that plaintiff is the sole shareholder and in fact the businesses are plaintiff's alter ego. As such the court pierces the corporate veil finding plaintiff liable to credit defendant for the hours worked on the former Johnson Rubber jobsite against the promissory note.

{¶ 28} Appellant argues that the record contains no evidence to support the trial court's finding that Bates Recycling, Inc. was his alter ego. Having reviewed the evidence in its entirety, we agree that the trial court erred in piercing the corporate veil. Indeed, appellee acknowledged during trial that the work he performed at the Johnson Rubber site was performed for Bates Recycling, Inc. Appellant consistently testified that he was diligent in maintaining a separation between his personal affairs and the affairs of the corporation, a claim appellee failed to refute with any evidence. Moreover, appellee did not allege, nor did the evidence establish, any fraud, illegal act, or similarly unlawful act committed by the corporation as a result of appellant's control over the corporation.

Finally, the evidence contained in the record fails to establish that appellant's injury resulted from appellant's wrongful control of Bates Recycling, Inc. We find that the alleged failure of a corporation to pay its employee, standing alone, is not a sufficient basis to set aside the general rule of shareholder limited liability and pierce the corporate veil.

{¶ 29} In sum, appellee introduced no evidence to meet his burden of establishing the three elements necessary in order to justify piercing the corporate veil. Therefore, we find that the trial court wrongfully held appellant personally liable for claims that should have been alleged against Bates Recycling, Inc. The trial court's judgment in appellee's favor on appellee's counterclaim was not supported by competent, credible evidence and was against the manifest weight of the evidence.

{¶ 30} Accordingly, appellant's second assignment of error is well-taken.

### C. Trial Court's Judgment Regarding the Appliances, Aluminum Brake, and Yard Trimmers

{¶ 31} In his third assignment of error, appellant argues that the trial court erred when it failed to render judgment in his favor for the $3,744.57 appellee allegedly borrowed from appellant to purchase appliances from Habitat for Humanity. In his fourth assignment of error, appellant contends that the trial court erred when it rejected his claim for damages stemming from appellee's taking of appellant's aluminum brake and yard trimmers without compensation. We will address these assignments of error simultaneously.

12.

**{¶ 32}** In essence, appellant's arguments challenge the trial court's determination as being against the manifest weight of the evidence. The standard of review for manifest weight is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. That is, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. In so doing, however, we must be "mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶ 33}** Concerning appellant's claim for damages arising out of appellee's purchase of appliances and alleged conversion of appellant's property, we agree with the trial court that "there was conflicting evidence produced during the trial of this matter." At trial, appellant maintained that he was asked by appellee to purchase 40 appliances from the Habitat for Humanity Restore so that appellee could restore the appliances and resell them. While appellee did not dispute that he had reimbursed appellant for the cost of the appliances, he insisted that appellant had agreed to delay reimbursement until appellee sold the appliances, at which time the parties would divide the profits. According to appellee's testimony, only six of the appliances had been sold as of the date of trial.

**{¶ 34}** As to the aluminum brake and the yard trimmers, appellant testified that appellee took possession of the items and agreed to sell them and reimburse appellant for

13.

the purchase price. However, appellee testified that he was not in possession of the aluminum brake, and that he has already returned the yard trimmers to appellant.

{¶ 35} Upon hearing the foregoing testimony, the trial court expressly found that "the evidence presented by [appellee] was more probable, more persuasive, more credible, more believable, and of greater probative value. The evidence presented by [appellee] outweighs and overbalances the evidence opposed to it." Having reviewed the evidence, we cannot say that the trial court clearly lost its way in weighing the parties' credibility concerning the appliances, aluminum brake, and yard trimmers. We find that the trial court's judgment on these claims was not against the manifest weight of the evidence.

{¶ 36} Accordingly, appellant's third and fourth assignments of error are not well-taken.

### III. Conclusion

{¶ 37} In light of the foregoing, the judgment of the Bowling Green Municipal Court is affirmed, in part, and reversed, in part. The trial court's judgment in favor of appellee on appellee's counterclaim is reversed, and this case is remanded to the trial court for the preparation of a judgment entry that includes interest in accordance with the terms of the promissory note between the parties. The trial court's judgment is affirmed in all other respects. The costs of this action are to be split between the parties pursuant to App.R. 24.

Judgment affirmed, in part
and reversed, in part.

14.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.            _____
                                                                                JUDGE

Arlene Singer, J.                

                                             _____
James D. Jensen, P.J.                                                      JUDGE
CONCUR.

                                             _____
                                                             JUDGE